This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                              No. A-1-CA-35008

**JULIAN NAVARETTE-GOMEZ,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LEA COUNTY**
**William G.W. Shoobridge, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Jane A. Bernstein, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
B. Douglas Wood III, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**FRENCH, Judge.**

{1}     Defendant Julian Navarette-Gomez was charged with trafficking cocaine, trafficking methamphetamine, possession of drug paraphernalia, and possession of a firearm by a felon after a traffic stop initiated for speeding and failure to use a turn signal. Defendant entered a conditional no contest plea to second-degree trafficking of methamphetamine and misdemeanor possession of drug paraphernalia, reserving his right to appeal the district court's denial of his motion to suppress. As a habitual offender, Defendant was sentenced to a prison term of seven years and two days. Defendant appeals from denial of his motion to suppress evidence based on violations of the Fourth Amendment of the United States Constitution and Article II, Section 10 of the New Mexico Constitution. We affirm.

**BACKGROUND**

{2}     Officer Gustavo Avina of the New Mexico State Police was the only witness presented by the State at the hearing on the motion to suppress, and testified as follows: On December 16, 2011, Officer Avina stopped Defendant on West County Road, outside of Hobbs, New Mexico, for speeding and failure to use a turn signal. Defendant did not produce his driver's license and had no insurance or registration for the vehicle he was driving. The license plate on the vehicle was registered to another vehicle. Officer Avina issued citations to Defendant and informed him that the vehicle would be towed. Officer Avina initially told Defendant to get "all the stuff" he needed

3

out of the vehicle, but then instructed Defendant to only take the stereo. Defendant acknowledged that Officer Avina told him only to take the stereo. Defendant then nonetheless began removing a number of other items from the vehicle and placing some in his pockets, at which point Officer Avina told Defendant "come here for a minute," and asked him if there was anything in his pockets that "shouldn't be there." Defendant initially said he did not know what was in his pockets, and then voluntarily admitted that he had a pipe for smoking methamphetamine and a scale. Officer Avina told Defendant to remove the contents of his pockets, and Defendant removed a pipe, a scale, a plastic bag containing cocaine, and a smaller "black or brown" bag. Officer Avina found two plastic bags containing methamphetamine in the smaller bag.

{3} In his motion to suppress, Defendant argued that Officer Avina's command that he "come here" and the questions about the contents of his pockets violated his rights under the Fourth Amendment of the United States Constitution and Article II, Section 10 of the New Mexico Constitution. Defendant argued that Officer Avina's conduct constituted a subsequent seizure after the traffic stop had concluded, one that was not based on reasonable suspicion.

{4} The district court denied the motion, and ruled orally that the time of the detention during which Officer Avina asked about the contents of Defendant's pockets was de minimis and that the totality of the circumstances supported reasonable

suspicion, based upon the fact that Officer Avina told Defendant to only retrieve the stereo and Defendant took multiple items from the vehicle, the fact that this was a nighttime traffic stop, that Defendant was acting nervous, and that these facts further suggested concern regarding Officer Avina's safety.

**DISCUSSION**

{5}     "A [district] court's determination on a motion to suppress evidence involves a mixed question of law and fact[.]" *State v. Bell*, 2015-NMCA-028, ¶ 2, 345 P.3d 342. Defendant does not dispute the facts in this case and we therefore limit our analysis to the application of the facts to the law which we review de novo. *Id*.; *see also State v. Neal*, 2007-NMSC-043, ¶ 15, 142 N.M. 176, 164 P.3d 57 (same); *State v. Martinez*, 2018-NMSC-007, ¶ 3, 410 P.3d 186 (same).

{6}     Defendant argues that the removal of items from the vehicle did not give the officer valid reasonable suspicion or other grounds to re-seize Defendant. Article II, Section 10 of the New Mexico Constitution requires "a reasonable justification for an initial stop and that *all* questions asked during the stop be reasonably related to the reason for the stop or otherwise supported by reasonable suspicion." *Bell*, 2015-NMCA-028, ¶ 15 (alteration, internal quotation marks, and citation omitted). Even questions that do not prolong the encounter are improper if they are not "reasonably related to the reason for the stop or otherwise supported by reasonable suspicion." *Id.*

5

¶ 16 (alteration, internal quotation marks, and citation omitted). To expand the scope of investigation, "[a] law enforcement officer must have reasonable and articulable suspicion that other criminal activity has been or may be [occurring]." *State v. Leyva*, 2011-NMSC-009, ¶ 59, 149 N.M. 435, 250 P.3d 861 (internal quotation marks and citation omitted). However, a de minimis extension of a stop that does not measurably extend its duration, particularly to ask questions which necessarily implicate officer safety, is not unreasonable under the Fourth Amendment. *See id.* ¶¶ 20-22, 32 (stating that the touchstone question under the Fourth Amendment is one of reasonableness and incorporates an officer's diligence in asking questions unrelated to the initial purpose of the stop, including safety related inquiries, that do not excessively prolong the traffic stop).

{7}     *Levya* provides the analytic roadmap in this case. Although the defendant in *Leyva* ultimately consented to the search of the vehicle and Defendant here claims that he did not consent to a search of his person, the defendant's arguments in *Leyva* were based in part on the fact that the officer improperly asked about the contents of the vehicle before the defendant consented to the search. *Id.* ¶¶ 2, 5. Thus, our Supreme Court's analysis of the officer's initial questioning and the totality of the circumstances are instructive. In *Leyva*, our Supreme Court looked at a number of facts which individually might not have given rise to reasonable suspicion, but when

6

viewed as a whole did. *Id.* ¶¶ 59-60. The Court then held that prolonging a traffic stop by ten minutes to ask about whether there was anything in the vehicle the officer needed to know about before the vehicle was turned over to a third party to remove it from the scene was a de minimis extension that was not unreasonable under the circumstances because the officer would have had safety concerns and still had a "need to control the scene[.]" *Id.* ¶¶ 33-34 (internal quotation marks and citation omitted). Moreover, although the officer in *Leyva* had already issued the citations and returned the defendant's information to him when he asked what was in the vehicle, his "need to control the scene" had not ended because the defendant was still present and waiting for a ride and a third party was coming to retrieve the vehicle. *Id.* ¶ 34 (internal quotation marks and citation omitted).

{8}    Applying *Leyva*, we must resolve whether Officer Avina had reasonable suspicion to expand his questions beyond those related to the purpose of the initial stop. In *Leyva*, the defendant was stopped for speeding, and the officer observed the defendant lean to the right and appear to stuff something under the passenger seat. *Id.* ¶ 4. During the course of the stop, the officer discovered the defendant's license was suspended and informed the defendant that he could have someone retrieve the vehicle within ten minutes or it would be towed and impounded. *Id.* The defendant arranged to have someone pick up the vehicle. *Id.* The officer then asked the defendant if there

7

was anything in the vehicle that he needed to know about, and the defendant responded that there was marijuana in the vehicle and consented to a search that also revealed methamphetamine. *Id.* ¶ 5. The district court found that the questions related to the contents of the vehicle did not violate Article II, Section 10 of the New Mexico Constitution, and our Supreme Court affirmed, holding that it was not unreasonable for the officer to inquire about the presence of contraband in the vehicle, given that the officer saw the defendant appear to hide something under the passenger seat. *Leyva*, 2000-NMSC-009, ¶ 60.

{9}     As did our Supreme Court in *Leyva*, we examine the totality of the circumstances encountered by Officer Avina. *Id.* ¶ 59. Here, after being informed his vehicle would be towed and that he should only take the stereo, Defendant instead removed multiple items from the vehicle and concealed them in his pockets. Defendant then acted nervous, and when asked claimed not to know that which he had just placed in his pockets. When initially stopped, Defendant had no driver's license, no registration or insurance for the vehicle he was driving, and claimed he had placed a different license plate on the vehicle due to an "emergency." The time extension to the stop caused by Officer Avina saying "come here" to Defendant and inquiring about the contents of Defendant's pockets was less than one minute. The total encounter lasted almost forty minutes. Such was not a constitutionally unreasonable

extension of the traffic stop, particularly given that Defendant was accessing the vehicle and concealing items in his pockets that he was removing contrary to Officer Avina's instruction that he take only the stereo, that Defendant was doing this minutes before Officer Avina's question, that Defendant did not appear to be attempting to leave the scene, and that the tow truck driver was present, all of which indicated that Officer Avina still had a need to both control the scene and ensure his own safety or that of the tow truck driver. Based on the foregoing, the district court correctly concluded that Defendant's emergence from the car "with multiple items . . . in the middle of the night . . . [and] putting something in [his] pockets, that there was a lawful search at that point[.]" We agree that Officer Avina's question about the contents of Defendant's pockets did not unreasonably prolong the encounter. Although any one of these facts described in the paragraph above itself might not give rise to reasonable suspicion, when viewed in total, we cannot say that the district court lacked substantial evidence upon which to determine that Officer Avina's conduct was supported by reasonable suspicion.

{10} We find unpersuasive Defendant's argument that *Bell* and *Leyva* instruct otherwise. In *Bell*, this Court concluded that reasonable suspicion did not exist to permit questions about rocket launchers, grenades, and dead bodies in the course of a DWI investigation, holding that such questions must be "analyzed to ensure they are

9

reasonably related to the initial justification for the stop or are supported by reasonable suspicion." 2015-NMCA-028, ¶ 15 (internal quotation marks and citation omitted). But we have held that unlike in *Bell*, Officer Avina's questions were supported by reasonable suspicion given the circumstances that arose during the traffic stop. And to reiterate, *Leyva* recognized that because "traffic stops are 'especially fraught with danger to police officers[,]' " searches "based upon the objectively reasonable belief that the individuals stopped pose a threat to officer safety [and that are] limited to its purpose of protecting the officers, and the public, during the stop" are constitutionally proper. 2011-NMSC-009, ¶ 25 (internal quotation marks and citation omitted). *See id.* (noting that movements by a vehicle's occupants that are consistent with hiding objects generally give rise to reasonable safety concerns). Consistent with *Leyva*'s conclusion that the defendant's furtive gestures, movements, and the appearance of hiding something under the front seat

satisfied an objective concern for officer safety and a permissible de minimis extension of a valid stop, the district court here correctly concluded that Officer Avina acted with objectively reasonable suspicion and concern for officer and public safety in the unfolding events presented to him.

{11} Because the broader protections of Article II, Section 10 of the New Mexico Constitution were not violated, we do not address Defendant's Fourth Amendment arguments.

**CONCLUSION**

{12} We affirm.

{13} **IT IS SO ORDERED.**

                               _____

                               **STEPHEN G. FRENCH, Judge**

**WE CONCUR:**

_____

**LINDA M. VANZI, Chief Judge**

_____

**J. MILES HANISEE, Judge**